# THE STATE v. WABASH RAILROAD COMPANY, Appellant.

### Division One, November 29, 1911.

1. **RAILROAD EMPLOYEES: Required to Work Without Rest: Unconstitutional Act.** The Act of March 25, 1905 (Secs. 7818 and 7819, R. S. 1909), providing that no railroad trainman of a freight train shall be required to work in operating such train more than sixteen hours in any one day of twenty-four hours, nor having so worked for sixteen hours be required or permitted to go to work again until he has had eight hours' rest, applies to interstate and intrastate commerce alike, and embraces the same subject and contains many of the same provisions as the Act of Congress of March 4, 1907, which is an exercise of the interstate commerce clause of the Constitution of the United States, and therefore said sections 7818 and 7819 are unconstitutional and void; and a railroad company which has required a conductor of freight trains engaged in interstate commerce, to return to work without eight hours' rest after a previous service of more than sixteen hours, cannot be convicted in the State courts, although the train was run by said conductor only between two towns in this State.

2. ————: ————: **Interstate Trains: Act of Congress in Force at Time of Trial.** A railroad company required a conductor of a freight train engaged in interstate commerce to work continuously for over twenty hours, in conducting said train from one station in this State to another station in this State, the train all the time being within this State; and at the last station, after only four hours' rest, required him to take charge of another train engaged in interstate commerce and to work for thirteen hours in conducting it to another town in this State. *Held*, that the railroad company cannot be prosecuted under the Act of March 25, 1905 (Secs. 7818 and 7819, R. S. 1909), since that act, as to interstate commerce, has been superseded and supplanted by the Act of Congress of March 4, 1909, which covers the same subject, and was in force at the time of the trial, though not at the time the conductor was so required to work.

Appeal from Audrain Circuit Court.—*Hon. Jas. D. Barnett,* Judge.

REVERSED AND REMANDED (*with directions*).

*J. L. Minnis* and *Robertson & Robertson* for appellant.

The defendant was engaged in interstate commerce. Not only is this presumed by the court, but that fact stands established by the evidence in this case; and this case is thereby brought within the rule announced in State v. Railroad, 212 Mo. 658. The testimony discloses that part of the train was actually engaged in interstate commerce, carrying cars destined for points outside of the State. The Employees' Liability and Safety Appliance Acts, (Thonton), 35-42. This statute on the face of it not only in the title but within the body of the act itself, has attempted to legislate upon a subject entirely within the control of the Congress of the United States. The inhibition is directed against any railroad corporation operating a line of railroad in whole or in part in the State of Missouri. This statute is in conflict with the regulations prescribed by Congress on the same subject, and the power of the State over the subject is excluded. This prosecution was begun on October 26, 1907. The judgment of conviction was entered on the 8th day of July, 1908. At the time the prosecution was begun, the Congress of the United States had taken control of this question so far as railroads and railroad employees are concerned engaged in interstate commerce. The Act of Congress was approved March 4, 1907. The State statute is superseded by the Act of Congress, and must give way, and in all things where there is a conflict, the Federal statute will control. Whenever there is a Federal statute upon the subject within the control of Congress, the State statute is of no effect or has become superseded. This is true even when the State law rests upon the police power of the State whenever Congress in the exercise of the powers granted it legislates upon the precise subject-matter. Railroad v. Heffley & Lewis, 158 U. S. 98. It is pro-

vided by this act that "it shall be unlawful for any corporation operating a line of railroad in whole or in part in the State of Missouri to require or permit any conductor," etc. The statute is directed, not only against the corporation operating a line of railroad in the State of Missouri alone, but against any railroad operating a line of railroad part in this and part in any other State. The statute is so drawn as not to distinguish interstate and intrastate commerce. A state statute so drawn as not to distinguish between interstate and intrastate commerce cannot stand as legislation upon either subject. State v. Railroad, supra. When the Congress of the United States legislated upon the subject, the Federal law superseded the State law upon the subject. Railroad v. Fuller, 17 Wall. 560; Wilson v. Blackbird, etc., Co., 2 Peters 245; Cooley v. Philadelphia Port Wardens, 12 How. 299; Pennsylvania v. Wheeling, etc., Bridge, 18 How. 421; Mobile County v. Kimball, 102 U. S. 691; Packet Co. v. Cattlesburg, 105 U. S. 559; Transportation Co. v. Parkersburg, 107 U. S. 691; Morgan v. Louisiana, 118 U. S. 455. Not only has Congress legislated upon the subject within its power and without the power of the State, but the regulations attempted by the State statute are in conflict with the Federal statute and the State law is, therefore, invalid. State v. Addington. 77 Mo. 116; State v. Railroad, supra.

*John D. Orear* for the State.

(1) The Legislature had a right to pass this law, and to determine into what State fund the penalty shall be paid. Cooley's Const. Lim. 578; 5 Wait's Act. and Def., sec. 7; Levy v. Gowdy, 2 Allen, 323; Weil v. Simmons, 66 Mo. 619; Cruschow v. Brown, 57 Mo. 38; Dailby v. Houston, 58 Mo. 361; Barnett v. Railroad, 68 Mo. 56. (2) This law is just and should be upheld. It prevents train crews from being overworked, and

protects the public from the danger of being served by trainmen worked past human endurance.

WOODSON, J.—At the January term, 1908, of the circuit court of Audrain county, John D. Orear, the prosecuting attorney thereof, filed therein, against the Wabash Railroad Company, the following .information, to-wit:

"State of Missouri, County of Audrain.

"In Circuit Court, January Term, 1908.

"The State of Missouri at the relation and to the use of John D. Orear, prosecuting attorney within and for the county of Audrain and State of Missouri, Plaintiff.

vs.

The Wabash Railroad Company, Defendant.

"Now comes plaintiff in the above entitled cause, and for its cause of action states that the defendant herein is a corporation duly organized and existing under and by virtue of the laws of the State of Missouri, and as such corporation is engaged in operating a line of railroad from the town of Moberly, in the State of Missouri, through the county of Audrain in the State of Missouri, and to Luther Station, in St. Louis county, Missouri, and in transporting freight in freight trains over said line of railroad.

"That on the 25th, 26th and the 27th days of February, A. D. 1907, the said Wabash Railroad Company had in its employ one E. C. Deskin, who was then and there employed by said Wabash Railroad Company as a conductor on and for freight trains. That while in the employment of the said defendant, he, the said E. C. Deskin, was required by the said defendant to take charge of a freight train, belonging to said defendant, as conductor thereof, at Moberly, Missouri, at six o'clock in the afternoon of the 25th day of February, A. D. 1907, for the purpose of conducting said train to Luther Station, in Saint Louis

county, Missouri. That the said E. C. Deskin acting under the orders of the said Wabash Railroad Company, did then and there take charge of said freight train as conductor thereof, and remained in charge of said freight train, as conductor thereof, in actual and continuous service, without any rest, sleep or relief from duty from said six o'clock in the afternoon of said 25th day of February, 1907, until he arrived in Luther Station, Saint Louis county, Missouri, with said freight train as conductor thereof, at twenty-five minutes past two o'clock in the afternoon of the twenty-sixth day of February, 1907.

"Plaintiff states further that at thirty minutes past six o'clock in the afternoon of the said twenty-sixth day of February, 1907, the said Wabash Railroad Company did then and there, unlawfully require the said E. C. Deskin to take charge of a freight train, as conductor thereof, for the purpose of conducting said freight train, from said Luther Station, in Saint Louis county, Missouri, to the town of Moberly, Missouri, before he, the said E. C. Deskin had eight hours' rest. That the said E. C. Deskin in compliance with the demand of the said Wabash Railroad Company, and without being permitted by said Wabash Railroad Company to have eight hours' rest, did take charge of said freight train, as conductor thereof, at said Luther Station in Saint Louis county, Missouri, and continued in charge of said freight train as conductor thereof, and in continuous service of said Wabash Railroad passing through a portion of Audrain county, Missouri, and until the town of Mexico, Audrain county, Missouri, was reached at twenty-two minutes past seven o'clock in the morning of the twenty-seventh day of February, 1907.

"Plaintiff states further that the said freight train which the said E. C. Deskin was required to take charge of as conductor thereof by the said Wabash Railroad Company, at said Luther Station, Saint

Louis county, Missouri, at thirty minutes past six o'clock in the afternoon of the said twenty-sixth day of February, 1907, for the purpose of conducting said train to Moberly, Missouri, was not then and there a passenger train, nor a freight train loaded exclusively with live stock or perishable freight, and that the said E. C. Deskin was not then and there the employee of a sleeping-car company, and that no accident nor casualty had occurred on defendant's said railroad, prior to or during the movement of said freight train from Moberly, Missouri, to Luther Station, St. Louis county, Missouri, and from said Luther Station in Saint Louis county, Missouri, to Mexico, Missouri, that rendered the movement of said freight train from said Luther Station, Saint Louis county, Missouri, to said Mexico in Audrain county, Missouri, necessary, and that made it necessary for said E. C. Deskin to conduct said freight train from said Luther Station, in Saint Louis county, Missouri, to said Moberly, Missouri, without having eight hours' rest.

"Plaintiff states further that the said Wabash Railroad Company was during the month of February, 1907, engaged in operating a line of railroad from Moberly, Missouri, through the county of Audrain and State of Missouri to Luther Station in Saint Louis county, Missouri, and that said Wabash Railroad Company is still so engaged in operating a line of railroad as aforesaid. That John D. Orear is the duly elected, qualified and acting prosecuting attorney of Audrain county, Missouri, and as such prosecuting atttorney, brings this action against said Wabash Railroad Company, in the name and for the use of the State of Missouri.

"Wherefore plaintiff prays that it have and recover from said Wabash Railroad Company, a penalty in the sum of one thousand dollars for said wrongful act as above set out, and for all other orders the court may deem proper and just."

In due time the defendant filed its answer, containing a general denial, and specially pleading that the information was wrongfully brought at the relation of the prosecuting attorney, and that it should have been brought in the name of the State of Missouri only, and because it did not conclude with the words, "against the peace and dignity of the State," as required by section 38 of article 6 of the Constitution.

The answer also challenges the constitutionality of the Act of March 25th, 1905, p. 112, now sections 7818 and 7819, Revised Statutes of 1909, upon which the information is based, for various reasons.

The Act of March 25th, 1905, reads as follows:

"Section 1. It shall be unlawful for any corporation or receiver operating a line of railroad, in whole or in part, in the State of Missouri, or any officer, agent or representative of such corporation or receiver to require or permit any conductor, engineer, foreman, brakeman, train-dispatcher, telegraph operator, or any trainman who has worked in his respective capacity for sixteen hours, within a day of twenty-four hours, to again go on duty or perform any work for such railroad until he has had at least eight hours' rest; *Provided,* this provision shall not apply in case of accident or casualty, or prevent the train crew from taking a passenger train, or freight loaded exclusively with live stock or perishable freight to the next nearest division point, upon such railroad; *Provided further,* that this section shall not apply to employees of sleeping car companies.

"Section 2. Any corporation or receiver operating a line of railroad, in whole or in part, in this State, who shall violate any of the provisions of this act, shall be liable to the State of Missouri for a penalty of not less than five hundred dollars, nor more than one thousand dollars for each offense, and such penalties shall be recovered and suit therefor shall be brought

in the name of the State of Missouri, in a court of proper jurisdiction in any county in the State into or through (which) any such railway may run, by the Attorney-General or under, his direction, or by the prosecuting attorney of any county through or into or out of which trains may be operated by said railroad. All fines and penalties collected or received for any violation of this act shall be paid into the 'good roads fund' of the State of Missouri, to be used only in the construction of gravel or macadam roads in the several counties of the State, outside of the incorporated cities and towns, in such manner as may be provided for by law.''

The facts out of which this prosecution grew are as follows: On the 25th and 27th days of February, 1907, the Wabash Railroad Company, had in its employ as a conductor in charge of freight trains one E. C. Deskin. He was called by the Wabash Railroad Company to take charge of a freight train as conductor, to go from Moberly, Missouri, to Luther Station, in St. Louis county, Missouri, as conductor of the train, which he did. Said Deskin was called into service at six o'clock p. m. February 25th, and after checking up his train, actually pulled out of Moberly at 5:45 p. m. February 25th, and continued in actual continuous service as conductor of the freight train until its arrival in Luther Station, at 25 minutes past two o'clock, the afternoon of the next day, February 26th. He was then allowed to rest until 6:30 o'clock the same afternoon, when he was again called into service by said Wabash Railroad Company and ordered to take charge of a freight train, to run from said Luther Station to Moberly, Missouri, which he did, remaining in charge as conductor until 7:32 a. m. of the morning of February 27th. In other words the defendant company required Deskin, the conductor, to work continuously from 6 o'clock p. m. of February 25th to 2:25 p. m. of February 26th, which was twenty hours and

State v. Railroad.

twenty-five minutes. Then with only four hours and five minutes' rest he was again called and placed in continuous service for thirteen hours and twenty-two minutes.

The evidence shows that the trains before mentioned were engaged in interstate commerce, at the dates complained of.

A trial was had, and under the facts as before stated the court found the defendant guilty and fixed its punishment at the sum of $700. From that judgment the defendant appealed to this court.

In this case, as in most of them which find their way to this court, counsel for each party have presented numerous legal propositions for determination.

But after a careful reading of the briefs, and a critical examination of the authorities cited, we have reached the conclusion that the case of State v. Railroad, 212 Mo. 658, is controlling in this. Counsel for the defendant, here as there, insist that the act in question is violative of the interstate commerce clause of the Constitution of the United States.

On March 4th, 1907, Congress enacted the following statute:

"Chap. 2939—An Act to promote the safety of employees and travelers upon railroads by limiting the hours of service of employees thereon.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the provisions of this act shall apply to any common carrier or carriers, their officers, agents, and employees, engaged in the transportation of passengers or property by railroad in the District of Columbia or any Territory of the United States, or from one State or Territory of the United States or the District of Columbia to any other State or Territory of the United States or the District of Columbia, or from any place in the United States to an adjacent foreign country, or from any place in the United States

State v. Railroad.

through a foreign country to any other place in the United States. The term 'railroad' as used in this act shall include all bridges and ferries used or operated in connection with any railroad, and also all the road in use by any common carrier operating a railroad, whether owned or operated under a contract, agreement, or lease; and the term 'employees' as used in this act shall be held to mean persons actually engaged in or connected with the movement of any train.

"Sec. 2. That it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employee subject to this act to be or remain on duty for a longer period than sixteen consecutive hours, and whenever any such employee of such common carrier shall have been continuously on duty for sixteen hours he shall be relieved and not required or permitted again to go on duty until he has had at least ten consecutive hours off duty; and no such employee who has been on duty sixteen hours in the aggregate in any twenty-four hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty; *Provided*, that no operator, train-dispatcher, or other employee, who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the day time, except in case of emergency, when the employees named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four hour period or not exceeding three days in any week: *Provided, further*, the Interstate Commerce Commission may after full

hearing in a particular case and for good cause shown extend the period within which a common carrier shall comply with the provisions of this proviso as to such case.

"Sec. 3. That any such common carrier, or any officer or agent thereof, requiring or permitting any employee to go, be, or remain on duty in violation of the second section hereof, shall be liable to a penalty of not to exceed five hundred dollars for each and every violation, to be recovered in a suit or suits to be brought by the United States district attorney in the district court of the United States having jurisdiction in the locality where such violation shall have been committed; and it shall be the duty of such district attorney to bring such suits upon satisfactory information being lodged with him; but no such suit shall be brought after the expiration of one year from the date of such violation; and it shall also be the duty of the Interstate Commerce Commission to lodge with the proper district attorneys information of any such violations as may come to its knowledge. In all prosecutions under this act the common carrier shall be deemed to have had knowledge of all acts of its officers and agents: *Provided,* that the provisions of this act shall not apply in any case of casualty or unavoidable accident or the act of God; nor where the delay was the result of a cause not known to the carrier or its officer or agent in charge of such employee at the time said employee left a terminal, and which could not have been foreseen: *Provided, further,* that the provisions of this act shall not apply to the crews of wrecking or relief trains.

"Sec. 4. It shall be the duty of the Interstate Commerce Commission to execute and enforce the provisions of this act, and all powers granted to the Interstate Commerce Commission are hereby extended to it in the execution of this act.

"Sec. 5. That this act shall take effect and be in force one year after its passage." [34 U. S. Stat. at Large, 59 Cong., Pt. 1. Pub. Laws, p. 1415, et seq.]

This prosecution was begun October 26, 1907, and the conviction was had July 8, 1908, thus showing that the act of Congress mentioned was in full force and effect, at the dates when this prosecution was instituted, and the judgment of conviction entered.

By reading the act of Congress and the act of the Legislature previously set out, it will be seen that they are practically the same and cover the same field or classes of legislation. While the act of Congress limits the scope of its operation to interstate and foreign commerce, there is nothing in the act of the Legislature restricting its operation to intrastate commerce. That being true its provisions are sufficiently comprehensive to embrace interstate commerce as well as intrastate.

Moreover, the evidence in this case shows that the trains Deskin, the conductor, was required to operate and conduct were engaged, as a matter of fact, in interstate commerce.

That being true, I repeat that the two acts are precisely the same, and in so far, at least, as this case is concerned the two acts are almost identical with each other, the act of Congress being slightly more favorable to the employees.

Upon such a state of facts, this court, in the case of State v. Railroad, supra, held that the Act of 1907, Laws 1907, p. 332, was violative of the interstate commerce clause of the Constitution of the United States, and was therefore absolutely null and void.

The same ruling has been announced by the Supreme Court of the United States in numerous cases.

Consequently, in the case at bar, we are compelled to hold that since the act of Congress before mentioned covers the same subjects or classes of legislation that are covered by the act of the Legislature of

1905, the former nullifies the latter as completely as if it had never been enacted.

Under this view of the case, it becomes unnecessary for us to decide the numerous other questions presented by counsel.

We are, therefore, of the opinion, that the judgment should be reversed and the cause remanded to the circuit court, with directions to quash the information filed against the defendant. It is so ordered. All concur.